UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GABRIEL DURAN, individually and on behalf of others similarly situated,

                Plaintiffs,

-against-

C AND J BROTHERS, INC. (d/b/a C AND J BROTHERS), et al.,

                Defendants.

22-CV-00387 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

Before the Court is the parties' proposed Settlement Agreement, ECF No. 23. For the reasons herein, the Court DENIES approval of the settlement.

## BACKGROUND

On January 14, 2022, Plaintiff Gabriel Duran ("Plaintiff" or "Duran") initiated this putative collective action against Defendants C and J Brothers, Inc., Chang Y. Park and Jung Yong Park (collectively, "Defendants"). The Complaint alleges that Defendants employed Plaintiff as a porter, stock and inventory worker at a produce market in the Bronx. ECF No. 1 ("Compl.") ¶ 4. Plaintiff further alleges that Defendants failed to pay him, and similarly situated employees, wages for all hours worked and failed to pay overtime compensation, among other allegations. *Id.* ¶¶ 4–8. Plaintiff asserts claims under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law §§ 190 *et seq*. and 650 *et seq*. ("NYLL"). *Id.* ¶¶ 65–81. He seeks unpaid wages, liquidated damages, interest, attorneys' fees and costs. *Id.* ¶ 9.

After the case was filed, the Court ordered the parties to participate in mediation, ECF No. 13, and, on August 1, 2023, the parties reported to the Court that they reached a resolution,

ECF No. 20. The parties then filed their Settlement Agreement and a letter supporting its approval. ECF No. 23. Under the parties' proposed settlement, Defendants will pay $15,000 to Plaintiff, which includes $9,620.67 to Plaintiff Duran and $5,379.33 in attorneys' fees and costs. *Id*. at 1; ECF No. 23-1 at 3. The proposed Settlement Agreement also includes a release and waiver of rights and claims by Plaintiff and a mutual non-disparagement provision. ECF No. 23-1 at 4, 6–7.

## DISCUSSION

Parties may not privately settle FLSA claims absent the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015); *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 807 (2d Cir. 2022). Rather, the parties must satisfy this Court that their settlement is "fair and reasonable." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015). In order to determine whether an agreement is fair and reasonable under the FLSA, the Court must:

> consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal citation and quotation marks omitted).

If the settlement agreement includes a provision for attorneys' fees, the Court must "separately assess the reasonableness of plaintiffs' attorney's fees." *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013). In order to aid in this determination, "counsel must submit evidence providing a factual basis for the [attorneys' fees] award." *Wolinsky*, 900 F. Supp. 2d at 336.

2

The Court also must closely scrutinize any release, confidentiality or non-disparagement provisions included in a proposed settlement. *See, e.g.*, *Arango v. Scotts Co., LLC*, No. 17-CV-7174 (KMK), 2019 WL 117466, at *4 (S.D.N.Y. Jan. 7, 2019); *Illescas v. Four Green Fields LLC*, No. 20-CV-9426 (RA), 2021 WL 1254252, at *1–2 (S.D.N.Y. Apr. 5, 2021); *Velandia v. Serendipity 3, Inc.*, No. 16-CV-1799 (AJN), 2018 WL 3418776, at *3–4 (S.D.N.Y. July 12, 2018).

The parties' agreed-upon damages, fees and mutual non-disparagement provision are reasonable. However, the Settlement Agreement's release provision is overbroad. Therefore, the Court rejects approval without prejudice to renew.

## I.   The Damages to Plaintiff Are Fair and Reasonable

The Settlement Agreement provides $9,620.67 in damages to Duran. Plaintiff submitted to the Court a chart outlining Plaintiff's total damages, exclusive of attorneys' fees and costs, he claims he is entitled to if he were successful on all claims. *See* ECF No. 23-2. The chart states that Duran is entitled to a total of $31,343.36, which represents $8,940.50 in unpaid wages and overtime, liquidated damages, prejudgment interest and damages for Defendants' alleged failure to provide wage statements and notices. *Id*. The total amount of damages was disputed by Defendants, and Plaintiff acknowledged that there are possible flaws in his initial calculation. ECF No. 23 at 2. In any event, the settlement amount represents over 30% of the maximum recovery, and over $500 more than the unpaid wages and overtime Duran claims he is owed. This recovery is reasonable. *See Khan v. Young Adult Inst., Inc.*, No. 18-CV-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) (collecting cases of approved FLSA settlements between 25–40% of plaintiff's maximum recovery).

The additional *Wolinsky* factors weigh in favor of approval of the settlement amount as well. Regarding the second factor, the parties have reached this resolution at the outset of the case before either party has expended significant energy and resources litigating this case. The resolution also helps Plaintiff avoid the uncertainty of litigation and the risks associated with ultimately proving the overtime and unpaid wages he is allegedly owed. Lastly, this settlement resulted from arm's length negotiations at a court-ordered mediation without any indication of fraud or collusion. Accordingly, the Court finds the damages to Plaintiff Duran reasonable.

## II.     The Attorneys' Fees and Costs Are Reasonable

Under this agreement, Plaintiff's counsel would receive $5,379.33, which includes attorneys' fees and $569 in costs. ECF No. 23 at 2. Attorneys' fees (not including costs) represent less than one third of the total settlement. This percentage is routinely approved in this district in FLSA cases. *See Vasquez v. Tasty Picks II Corp.*, No. 21-CV-8799 (ER), 2022 WL 17249365, at *2 (S.D.N.Y. Nov. 28, 2022) (citing *Lazo v. Kim's Nails at York Ave., Inc.*, No. 17-CV-3302 (AJN), 2019 WL 95638, at *2 (S.D.N.Y. Jan. 2, 2019). And, "[t]his sum is consistent with contingency fees that are commonly accepted in the Second Circuit in FLSA cases." *Cortes v. New Creators, Inc.*, No. 15-CV-5690 (PAE), 2016 WL 3455383 at *5 (S.D.N.Y. June 20, 2016) (internal quotation marks omitted) (collecting cases).

The Court still must "use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Lazo*, 2019 WL 95638, at *2. "The lodestar amount is the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Id.* (internal citation and quotation marks omitted). Here, Plaintiff's counsel submitted billing records for the attorneys who worked on the case. *See* ECF No. 23-4. Bryan D. Robinson, an associate of CSM Legal, P.C., and paralegals performed the vast majority of work – all but one

4

and a half hours – on behalf of Plaintiff. Mr. Robinson billed at a rate $300 per hour. He is a 2018 law graduate, and "has managed a case load of over 65 employment related actions from intake to verdict in the Southern and Eastern Districts of New York." ECF No. 23 at 3. The Court finds Mr. Robinson's $300 hourly rate reasonable. *See Vasquez*, 2022 WL 17249365, at *3 (finding $350 per hour a reasonable rate for an associate at CSM Legal).

The hourly rate for CSM Legal's paralegals is $125 per hour. The Court also finds this amount reasonable. *See id*. (upholding this rate for CSM Legal paralegals and noting that "hourly rates for paralegals of $100 to $150 per hour are typical for awards in this district").

The records show that Mr. Robinson spent 15.2 hours on this case, reviewing the Complaint, reviewing the answer, preparing for and participating in mediation and conducting calls with the client. The paralegals spent 6.4 hours on this case, drafting documents and participating in client calls. The lodestar for Mr. Robinson and CSM Legal's paralegals is $5,360. With $569 in costs included, Plaintiff's counsel will receive, under the Settlement Agreement, less than the Court's calculated lodestar, which includes time only from Mr. Robinson and paralegals. As such, the lodestar method confirms the reasonableness of the fees under the Settlement Agreement.

### III.    The Mutual Non-Disparagement Provision Is Reasonable

The Settlement Agreement also includes a non-disparagement provision. ECF No. 23-1 at 6–7. Non-disparagement clauses are not *per se* objectionable. *Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015). However, courts regularly reject these provisions when they are not mutual and do not include a carve-out allowing FLSA plaintiffs to make truthful statements about their experience litigating their case. *See, e.g.*, *id*. (rejecting the parties' non-disparagement provision that did not contain a carve-out

for plaintiff to discuss his experience in litigation); *Martinez v. Gulluoglu LLC*, No. 15-CV-2727 (PAE), 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (same); *Escalante v. Elimor LLC*, No. 22-CV-6784 (AT), 2023 WL 4350652, at *2 (S.D.N.Y. July 5, 2023) (rejecting an agreement that included a non-disparagement clause that only allowed Plaintiff to "provid[e] truthful and accurate information as required by process of law"); *Weng v. T&W Restaurant, Inc.*, No. 15-CV-8167 (PAE) (BCM), 2016 WL 3566849, at *4 (S.D.N.Y. June 22, 2016) (rejecting a one-way non-disparagement provision).

The provision at issue here is mutual and contains the requisite carve-out. It bars both Plaintiff and Defendants from "disparag[ing] [one another] in any forum or form . . . by making comments or statements to the press or any individual or entity which could adversely affect" the other's "reputation or interests . . . ." ECF No. 23-1 at 6–7. It also prohibits Defendants from "providing negative employment references on behalf of Plaintiff . . ." *Id.* at 6. But, it permits both parties to "communicate truthfully regarding their experience during the Litigation" and does not restrict either party from "responding to, or testifying pursuant to, any subpoena, court order or other legal mandate from applicable regulatory authorities." *Id.* at 7. As such, the Court find this provision reasonable.

### IV.    The Release Is Overbroad

The Settlement Agreement includes a release provision. In it, Plaintiff agrees to "release and forever discharge[] Defendants, their agents, employees, successors, and assigns and *all affiliated business entities* . . . from any and all claims . . . ." under: (1) all FLSA and certain NYLL provisions; (2) all claims for payment of income and employment taxes; and (3) any other claims whatsoever alleged in the Action. ECF No. 23-1 at 4 (emphasis added).

The release is overbroad in at least three ways. First, the release is not limited in time and results in Plaintiff waiving any wage and hour claim he might ever have against Defendants and others. Although Plaintiff is no longer employed by Defendants, the risk remains that Plaintiff could be re-employed by Defendants or a "successor[], assign, [or] affiliated business entit[y]" and he would be precluded from seeking relief for wage and hour violations. Courts reject releases that encompass future claims. *See, e.g.*, *Gulluoglu*, 2016 WL 206474, at * 2; *Carranza v. VBFS, Inc.*, No. 20-CV-2635 (PAE), 2022 WL 2763371, at *2 (S.D.N.Y. June 15, 2022) (rejecting a release because, among other concerns, "it shields defendants and their successor entities from any future action").

Second, the release extends beyond the overtime claims at issue in this litigation. For example, the release includes "all claims for payment of income and employment taxes." ECF No. 23-1 at 4. It also covers "any and all claims . . . under [FLSA]" and several provisions of NYLL, even those outside of the scope of this action. Courts reject similarly broad releases. *See, e.g. Carranza,* 2022 WL 2763371, at *2 (rejecting an agreement because, among other concerns, it releases NYLL and FLSA claims that "extend[] way beyond the overtime and minimum wage claims that are at issue in this litigation"); *Lazaro-Garcia*, 2015 WL 9162701, at *2.

Third, the release is not limited to the Defendants here, but instead sweeps in "affiliated business entities." ECF No. 23-1 at 4. This term could include any number of employers. It would prevent Plaintiff from at any point in the future bringing claims under FLSA, certain provisions of NYLL or any claims related to income and employment taxes against any employer Defendants might deem "affiliated." A provision this broad is unreasonable and "is inconsistent with the underlying policies of the FLSA." *Garcia v. Jambox, Inc.*, No. 14-CV-3504 (MHD), 2015 WL 2359502, at *4 (S.D.N.Y. Apr. 27, 2015).

As others in this District have held, this Court will "not approve the Agreement until the release is sufficiently narrowed to cover only released conduct that arises out of the identical factual predicate as the settled conduct." *Id*. (internal citation and quotation marks omitted).

## CONCLUSION

For the foregoing reason, the Court denies approval of the Settlement Agreement at this time. The parties may:

(1) File a revised Settlement Agreement by **September 22, 2023** with a narrower release consistent with this Order; or

(2) Submit a joint letter by **September 22, 2023** indicating their intention to abandon settlement and continue litigating this matter.

Dated: September 7, 2023
New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge